# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUWAYNE M. JACKSON, | ) 1:13cv00009 DLB PC |
| Plaintiff, | ) ORDER DISMISSING SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND |
| vs. | ) |
| AKKANO, et al., | ) **THIRTY-DAY DEADLINE** |
| Defendants. | ) |

Plaintiff Duwayne M. Jackson ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 28 U.S.C. § 1983.  Plaintiff filed this action on January 3, 2013.  Pursuant to the Court's August 26, 2013, screening order, he filed a Second Amended Complaint ("SAC") on September 25, 2013.  Plaintiff names over 35 Defendants.[1]

A.   <u>SCREENING REQUIREMENT</u>

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C.

---

[1] Plaintiff consented to the jurisdiction of the United States Magistrate Judge on January 11, 2013.

1

§ 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law.  Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983.  Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.  Plaintiff must present factual allegations sufficient to state a plausible claim for relief.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

B.      **PLAINTIFF'S ALLEGATIONS**

Plaintiff is currently housed at the California Substance Abuse Treatment Facility ("CSATF") in Corcoran, California. The events at issue occurred while Plaintiff was incarcerated at Kern Valley State Prison ("KVSP").

Plaintiff alleges that on May 5, 2011, after being released from a vocational education class, he was assaulted by two other inmates. He suffered a "non-union scaphoid fracture," a bruised and swollen eye and a gunshot wound from a rubber bullet block gun. He states that he was intentionally denied access to adequate medical care.

Plaintiff alleges that Defendant Stewart ordered him to Ad-Seg and charged him with mutual combat. Plaintiff states that correctional officials knew that he had become "prey" by disassociating with a gang. Plaintiff contends that the officials' knowledge shows a failure to protect.

Plaintiff was released from Ad-Seg on May 6, 2011. Although he had a fractured wrist, he was assigned an upper bunk and had to climb up and down. He alleges that the medical staff knew of his injury, and knew that he did not have the proper chrono.

On June 10, 2011, Plaintiff submitted an inmate appeal about his housing and related safety concerns. The appeal was denied.

On June 13, 2011, Plaintiff alleges that Defendant Dileo "prematurely diagnosed" and described Plaintiff's fracture as healing.

On June 20, 2011, Plaintiff alleges that Defendant Patel was deliberately indifferent because he did not respond "reasonably" when Plaintiff complained of severe pain and switched his Ibuprofen to Tylenol.

On July 11, 2011, Plaintiff saw Defendant Schaefer, who refused to treat Plaintiff even though he complained of the staff's failure to respond reasonably.

Plaintiff saw Defendant Lozovoy on July 28, 2011, and although Defendant Lozovoy knew of Plaintiff's pain and physical injury, he was deliberately indifferent.

On August 1, 2011, Plaintiff was assessed by Defendant Paik at Pacific Orthopedic. He recommended observation and immobilization in a cast for a fracture. Plaintiff alleges that on his return to KVSP, Defendant John Doe 1 recommended that Plaintiff exercise despite Defendant Paik's recommendation that Plaintiff "self-restrict" activity.

On November 4, 2011, Plaintiff was again assaulted by inmates. Plaintiff alleges that correctional officers knew that an attack was imminent. The correctional officers told Plaintiff that he could sign a document indicating that he did not consider his assailants to be enemies, or be placed in Ad-Seg. Defendant Amaya failed to protect Plaintiff by moving the inmates who attacked Plaintiff to the upper yard. Plaintiff explains that he had been moved six to eight times for safety concerns, "but Defendant Amaya had no problem with a quick fix to an ongoing problem."

Plaintiff was attacked again on January 16, 2012, by inmates who were associated with the Blood/Piru disruptive group. Plaintiff alleges that Defendants Seledzky and Pittman, who were both aware that Plaintiff had disassociated, housed him with a known member of the Crips. Plaintiff continuously complained to officers about the failure to protect him.

After the attack, Plaintiff was placed in the same cell as the assailants. The assailants' gang sent Plaintiff a threatening message. Plaintiff told staff that he would commit suicide and was housed in a crisis bed.

On January 30, 2012, after Plaintiff was taken to Ad-Seg, Defendant Grissom came to Plaintiff's cell and told him that Defendant Beltzinger wanted to see him. Defendant Grissom handcuffed Plaintiff behind his back, despite his arm injury, and took him to Defendant Beltzinger. Defendant Beltzinger asked Plaintiff if he was requesting placement in protective custody. Defendant Beltzinger became angry and called Plaintiff a liar when he said he was

4

changing his life and didn't know why he was being assaulted. He instructed Defendant Grissom to take Plaintiff out of his office, and Defendant Grissom forcefully escorted Plaintiff back to his cell by using the "chicken wing maneuver."

On February 11, 2012, Plaintiff was housed in Ad-Seg waiting for placement in protective custody. Defendant Trotter threatened Plaintiff and said that he and five other officers were going to assault Plaintiff because Plaintiff flooded the housing unit floor. Plaintiff states that the floor was flooded because Defendant Trotter "failed to issue Plaintiff allowable inmate purchased items." Plaintiff states that Defendant Trotter "breached" Plaintiff's security in the presence of Defendants Beltzinger, Gallagher, Lane, Rodriguez and Tafoya. Defendant Trotter said, in a loud voice, that Plaintiff was requesting protective custody and that he was a "female dog." Defendant Trotter said he would tamper with Plaintiff's food and his property, and that his safety would be in jeopardy.

Also on February 11, 2012, Plaintiff was depressed and attempted suicide. He was placed in a crisis bed.

On February 16, 2012, Plaintiff complained of pain to Defendant Bowier after he was handcuffed behind his back.

On February 27, 2012, Plaintiff saw Defendant Strome. Despite pain and Defendant Strome's knowledge of the recommendation for bone graft surgery, he did not receive treatment.

On March 12, 2012, Plaintiff was denied pain medication. He alleges that Defendants Akkano and Chen were aware of his visit to Dr. Paik. Plaintiff states that he refused to be re-cast because he suffered through extraordinary tenderness.

Plaintiff states that from May 5, 2011, through September 21, 2012, he complained to officials that he was in excruciating pain, but he was denied medical treatment. Although Plaintiff attended medical visits consistently, no treatment was provided and his medical appeals

were all eventually dismissed.  He only received an Ace bandage and Ibuprofen, which did not help with the pain.

On March 20, 2012, Plaintiff was taken to classification committee with Defendants Sandoval, Cox and Acebedo.  Plaintiff explained that he requested protective custody, but Defendants released him into the general population.

Plaintiff alleges that he was in his cell when Defendant Trotter approached and asked if Plaintiff was ready to go.  Plaintiff refused and was taken to Ad-Seg.  He was placed on the sensitive needs yard and on the ride to the facility, Defendant Trotter told Plaintiff that he was going to get it and made Plaintiff get his property from the van.

On April 24, 2012, Plaintiff was seen by Defendant Amanasara.  He complained of severe pain and asked about surgery.  Defendant Amanasara told him that it was denied, provided no medical treatment, and scheduled another visit in 90 days.

On July 4, 2012, Plaintiff was assaulted in the sensitive needs yard.  On information and belief, Plaintiff contends that this attack was encouraged by Defendant Trotter.  Defendant Kirby held Plaintiff in pre-Ad-Seg with his assailants so that Plaintiff would become "prey" for the other inmates.

Plaintiff requested protective custody on July 5, 2012, and he was placed in Ad-Seg.

On July 10, 2012, Plaintiff was taken to classification committee with Defendants Lesinack, Biter, Goree.  They released Plaintiff to D facility despite knowing of the substantial risk of harm that he would face.

On July 23, 2012, Plaintiff believed he was being housed with his enemies as a set up.  He was rehoused in Ad-Seg.

On August 1, 2012, Defendants Lomelli and Francis came to Plaintiff's cell and took his Ace bandages, wrist brace and back brace even though he told them that these were prescribed treatments.

Based on these facts, Plaintiff contends that Defendants violated his Eighth Amendment right to medical care by providing little to no treatment for his fracture. He alleges that the failure to provide treatment led to bone decay and bone graft surgery.

Plaintiff also alleges that Defendants Beard and Biter violated his Eighth Amendment rights and his Fourteenth Amendment right to due process by not placing Plaintiff directly into protective custody, and instead placing him in a sensitive needs yard.

He contends that Defendants Beltzinger, Trotter, Grissom, Gallagher, Lane, Rodriguez, and Tafoya violated his Eighth Amendment rights by not supervising the actions and misconduct of their peers.

Finally Plaintiff contends that Defendants Beltzinger, Seledzskey, Pittman, Sandoval, Acebedo, Kirby, Stewart and Amaya violated his Eighth Amendment rights and his Fourteenth Amendment right to due process by failing to protect Plaintiff and placing him in danger.

**C.     ANALYSIS**

   1.     *Defendants*

Plaintiff names approximately 39 Defendants. However, he does not allege any facts against Defendants Marsarah, O'Brien, Schaiter, Tarnoff, Davis, Stebbins and Gilarducci. Although Plaintiff attaches over 60 pages of exhibits, the Court will not sift through the exhibits to find facts related to these Defendants. As explained above, it is Plaintiff's responsibility to state, in the complaint, how each Defendant is linked to an alleged act or omission.

   2.     *Rules 18 and 20*

Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). As an initial matter, Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of

law or fact.  Fed. R. Civ. P. 20(a)(2); <u>Coughlin v. Rogers</u>, 130 F.3d 1348, 1351 (9th Cir. 1997); <u>Desert Empire Bank v. Insurance Co. of North America</u>, 623 F.3d 1371, 1375 (9th Cir. 1980). Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

In this prior screening order, the Court explained that Plaintiff brought unrelated claims against unrelated parties.  Although he has now confined his claims to those arising at one institution, he continues to join unrelated parties and unrelated claims.  Plaintiff claims arise out of (1) medical treatment related to his wrist/hand fracture; and (2) failure to protect.  The Defendants involved in his medical treatment are not involved in the alleged failure to protect, and vice versa.  Accordingly, and especially given the number of total Defendants involved, the medical clams should not be joined with the failure to protect claims.

2.     *Eighth Amendment – Medical Treatment*

For Eighth Amendment claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." <u>Wilhelm</u>, 680 F.3d at 1122 (citing <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006)).  Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." <u>Wilhelm</u>, 680 F.3d at 1122 (citing <u>Jett</u>, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. <u>Snow v. McDaniel</u>, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); <u>Wilhelm</u>, 680 F.3d at 1122.

As far as the Court can tell, Plaintiff's medical claims involve Defendants Akkano, Schaefer, Dileo, Patel, Chen, Strome, Bowier, Amanasra, Lozovoy, Francis, Paik and Defendant

Doe 1.  He contends that although he requested treatment for over a year, he received only Ibuprofen and Ace bandages.  He does not, however, demonstrate that any Defendant acted with deliberate indifference.  Again, the Court will not comb through the exhibits in search of support for his allegations.

Plaintiff's allegations against Defendant Paik and John Doe only describe the treatment provided.  He does not state how the treatment was deficient.  For example, Defendant Paik recommended that he be casted and Defendant John Doe recommended that Plaintiff exercise.  Plaintiff does not allege any specific wrongdoing.

Similarly, Plaintiff only states that he told Defendant Bowier that he had pain when he was handcuffed behind his back.  He does not provide any facts as to how he believes the treatment was inadequate.

As to Defendant Dileo, Plaintiff suggests that Dileo "prematurely" described his fracture as healing.  Given that he saw Dileo over one month after the fracture, and his failure to include additional facts, Plaintiff has not demonstrated that Dileo acted with deliberate indifference.

Plaintiff does not include any specific facts against Defendant Lozovoy, and only states that he was deliberately indifferent.  Such legal conclusions are insufficient.

As to Defendant Patel, Plaintiff states that he did not act "reasonably" and changed Plaintiff's Ibuprofen to Tylenol.  Whether he acted reasonably, however, is not the standard for an Eighth Amendment claim.  Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005) (mere negligence is not deliberate indifference).

Plaintiff also alleges that Defendants Francis, Lomelli, and Lesinack came to his cell and took his Ace bandages, a wrist brace and a back brace.  Plaintiff states that he told them that they were prescribed, but he "handed them over."  Again, Plaintiff's allegations are too vague to demonstrate that they acted with deliberate indifference.

Finally, Plaintiff alleges that Defendants Schaefer, Strome, Akkano, Chen and Amanasara simply failed to provide treatment despite his complaints. Plaintiff has alleged, however, that he was receiving Ibuprofen and using Ace bandages, and that he continuously attended medical appointments. While he may have liked different pain medication, Plaintiff does not provide sufficient facts to demonstrate that any Defendant acted with deliberate indifference.

The Court explained in the prior screening order that a difference of opinion between Plaintiff and his treating sources does not give rise to a section 1983 claim. "A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)); Wilhelm v. Rotman, 680 F.3d 1113, 1122-23 (9th Cir. 2012) (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

Plaintiff has failed to state a claim under the Eighth Amendment based on medical treatment against any Defendant.

4. *Eighth Amendment- Failure to Protect*

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S.Ct. 1970 (1994) (internal citations and quotations omitted). Prison officials have a duty to take reasonable steps to protect inmates from physical

abuse.  Farmer, 511 U.S. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).  The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff.  E.g.,Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040.

To adequately allege deliberate indifference, a plaintiff must set forth facts to support that a defendant knew of, but disregarded, an excessive risk to inmate safety.  Farmer, 511 U.S. at 837.  Specifically, the plaintiff must show that the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," actually drew that inference, and failed to respond reasonably to the risk.  Id. at 837, 844.  If deliberate indifference by prison officials effectively condones the attack by allowing it to happen, those officials can be held liable to the injured victim.  Farmer, 511 U.S. at 833-834.

Plaintiff's failure to protect claim is based on his belief that Defendants were aware that he had become "prey" to the other inmates.  His allegations are too vague, however, to show that any Defendant was aware of a substantial risk and failed to respond reasonably to the risk.

As an initial matter, Plaintiff groups Defendant Beard into the failure to protect claim, but does not include any factual allegations against him.

For Defendants Stewart, Amaya, Grissom, Beltzinger, Sandoval, Cox, Acebedo, Lesinack, Biter and Goree, Plaintiff alleges that their housing decisions led to a violation of his rights.  However, there isn't a sufficient connection between their decisions and the assaults.  For example, Plaintiff alleges that Defendant Stewart ordered him to Ad-Seg, but there was a six month gap between his actions and Plaintiff's November assault.  He alleges that he asked Defendants Sandoval, Cox and Acebedo for protective custody in March, but he was not attacked again until July.  Moreover, at the time of the July attack, he had already been moved from the general population, where he was housed by Defendants Sandoval, Cox and Acebedo.  Similarly,

Plaintiff alleges that Defendants Lesinack, Biter and Goree released him to D Facility in July 2012, despite knowing of a risk, but Plaintiff does not allege any resulting harm.

Plaintiff alleges a more specific connection against Defendants Seledesky, Pittman, Trotter and Kirby, but his allegations still fall short. He alleges that Defendants Seledesky and Pittman were aware of Plaintiff's disassociation but housed him with a known member of the Crips. It is unclear, however, whether this is related to his January 16, 2012, attack by inmates associated with the Bloods/Piru disruptive group.

Similarly, Plaintiff alleges "on information and belief" that Defendant Trotter encouraged the July 2012 attack, but this is not factually sufficient to state a claim. He also states that Defendant Kirby left him in a unit with his attackers, but he does not allege any resulting harm.

Finally, Plaintiff alleges that while he was housed in Ad-Seg in February 2012, Defendant Trotter threatened him and said loudly, so that other inmates could hear, that Plaintiff had requested protective custody. However, "extreme deprivations are required to make out a conditions-of-confinement claim," and threats do not rise to this level. Hudson v. McMillian, 503 U.S. 1, 9 (1992) (internal quotation marks and citations omitted); Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987). Additionally, mere verbal harassment or abuse alone is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). Moreover, the next attack was five months after Defendant Trotter's alleged statements.

As Plaintiff has not alleged sufficient facts against Defendant Trotter, there can be no liability against Defendants Beltzinger, Gallagher, Lane, Rodriguez and Tafoya. Plaintiff alleges that these Defendants were present during the February 2012 incident, but this is insufficient to establish liability.

Accordingly, Plaintiff fails to state an Eighth Amendment claim against any Defendant.

5.  *Due Process*

Plaintiff also contends that the allegations giving rise to his Eighth Amendment claim also violate the Due Process Clause of the Fourteenth Amendment. However, the concept of substantive due process is expanded only reluctantly and therefore, if a constitutional claim is covered by a specific constitutional provision, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process. County of Sacramento v. Lewis, 523 U.S. 833, 843, 118 S.Ct. 1708 (1998) (quotation marks and citation omitted).

Here, Plaintiff's failure to protect claim is properly analyzed under the Eighth Amendment and he does not state a claim for denial of due process.

D.  **CONCLUSION AND ORDER**

For the reasons discussed above, Plaintiff's SAC fails to state any claims against any Defendants. Plaintiff will be permitted to amend his complaint, though he must follow the guidelines above. Plaintiff's complaint must also comply with Rules 18 and 20. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George, 507 F.3d at 607 (no "buckshot" complaints). **In other words, if Plaintiff amends, he must present either his medical claims or his failure to protect claims, but not both.**

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 676-77. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the prior complaint, <u>Forsyth v. Humana, Inc.</u>, 114 F.3d 1467, 1474 (9th Cir. 1997); <u>King v. Atiyeh</u>, 814 F.2d 565, 567 (9th Cir. 1987), and it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's SAC is dismissed, with leave to amend, for failure to state a claim;

2. The Clerk's Office shall send Plaintiff a civil rights complaint form;

3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint;

4. <u>If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim</u>.

5. This will be Plaintiff's **<u>final chance to amend his complaint</u>** to comply with the standards this court has laid out in this and the previous screening order.

IT IS SO ORDERED.

Dated:   **March 14, 2014**                    /s/ *Dennis L. Beck*
                                               UNITED STATES MAGISTRATE JUDGE